UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Wadie Jaafar, *pro se*,                               :
                                                      :
                Petitioner,             :
                                                      :     **MEMORANDUM AND ORDER**
                -against-              :
                                                      :     12-CV-3321 (DLI)
United States of America,                             :
                                                      :
                Respondent.            :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Wadie Jaafar ("Petitioner") filed the instant action, *pro se*, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2255, vacating his sentence on the ground that he was denied his Sixth Amendment right to counsel and his Fifth Amendment right to due process. (*See* Petition ("Pet."), Dkt. Entry No. 1.) The government opposes the Petition in its entirety. (*See* Respondent's Opposition ("Opp'n"), Dkt. Entry No. 7.) For the reasons set forth below, the Petition is denied.

## BACKGROUND

On March 11, 2010, Petitioner was arrested for his participation in a money laundering conspiracy and for trafficking counterfeit clothing. (Presentence Investigation Report ("PSR"), Opp'n App'x Ex. A, Dkt. Entry No. 8 at ¶ 29.) The charges stemmed from Petitioner's operation of a clothing store, Blu Gear, in Union City, New Jersey, where he sold counterfeit clothing. (*Id.* at ¶ 18.) He was also involved in transporting proceeds from the sale of those counterfeit goods to Lebanon with co-conspirator Younes El Saleh[1] and a third individual. (*Id.* at ¶¶ 12, 13.) Petitioner and El Saleh supplied each other with counterfeit goods. (*Id.* at ¶ 15.) Petitioner also supplied his relative, Ayman Jaafar, with counterfeit goods, which Ayman sold in New York

---

[1] El Saleh operated Master Clothing, a store in New York, New York, where he sold counterfeit goods, as well as a warehouse in Long Island City, New York, where he also sold counterfeit goods. (*Id.* at ¶ 15.)

City. (*Id*. at ¶ 18.)

On October 29, 2009, the New York City Police Department ("NYPD") searched Petitioner's store and El Saleh's store and warehouse pursuant to search warrants. (*Id*. at ¶ 14-21.) The NYPD seized counterfeit clothing worth $411,275 from Petitioner's store and counterfeit clothing worth $1,158,840 from El Saleh's store and warehouse, as well as accounting ledgers and other documents. (*Id*. at ¶ 20.)

On April 9, 2010, a grand jury indicted Petitioner for his participation in the money laundering conspiracy in violation of 18 U.S.C. §§ 1956(h), 1957(b), 1957(d)(1) and 3351, and trafficking counterfeit clothing in violation of 18 U.S.C. §§ 2, 2320(a), and 3351. (Opp'n at 4.) On January 13, 2011, Petitioner pled guilty before then-Magistrate Judge Andrew Carter to money laundering, in violation of 18 U.S.C. § 1956(h), for conspiring to launder more than $400,000 worth of counterfeit clothing proceeds. (Plea Allocation Transcript ("Guilty Plea Tr."), Opp'n Ex. C at 21.)

Petitioner pled guilty pursuant to a written plea agreement. (*See* Plea Agreement, Opp'n Ex. A.) Pursuant to the Plea Agreement, the parties estimated that, under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), Petitioner's involvement in the laundering of more than $400,000 of counterfeit clothing proceeds, *inter alia*, would result in a Guidelines Range of 37-46 months of imprisonment.[2] Petitioner expressly waived his right to appeal or collaterally attack his conviction or sentence, if the court sentenced Petitioner to a term of imprisonment of 51 months or less. (*Id*. at ¶ 4.) The government agreed that no further criminal charges would be brought against Petitioner for trafficking counterfeit goods and laundering the

---

[2] The Plea Agreement initially estimated a total offense level of 22 after taking into account the base level offense of 8, plus an enhancement of 14 points for the laundering of more than $400,000. (Plea Agreement at ¶ 2.) Assuming Petitioner's criminal history to fall into Category I, his total offense level corresponded to 41-55 months of imprisonment. Petitioner's timely guilty plea brought the total level down to 21, with an estimated Guidelines Range of 37-46 months of imprisonment. (*Id*.)

proceeds of such activity during the period of January 1, 2009 to January 31, 2010. (*Id*. at ¶ 14) The government also agreed that it would take no position concerning where within the Guidelines Range the sentence should fall and would not move for an upward departure. (*Id*.)

During Petitioner's plea allocution, Petitioner stated, under oath, that he had discussed the Plea Agreement with his attorney and Petitioner understood it. (Guilty Plea Tr. at 6, 16.) Notably, Petitioner also stated that he understood that he could not "file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of fifty-one months or below." (*Id*. at 19.) Petitioner stated that he was willing to give up his right to trial and all other rights discussed. (*Id*. at 20.) Petitioner stated that he was "satisfied" with defense counsel's representation. (*Id*.) The Magistrate Judge found "that Mr. Jaafar [was] competent to proceed and he [understood] the rights he'd be waiving up by pleading guilty" and recommended to this Court that Petitioner's plea be accepted. (*Id*. at 25.) On June 28, 2011, this Court accepted Petitioner's guilty plea. (Judgment of Conviction ("J. of Conviction"), Opp'n Ex. E at 1.)

Petitioner was sentenced on June 28, 2011. In determining the appropriate Guidelines Range applicable to Petitioner, the Court applied: (a) a base-offense level of eight (*see* U.S.S.G. §§ 2S1.1(a)(1), 2B5.3(a); Plea Agreement at ¶ 2); (b) a 14-level enhancement based on a loss amount of $400,000 as set forth in the Plea Agreement, which represented only the amount of counterfeit goods in Petitioner's possession, over the objection the United States Probation Department ("Probation") that the loss amount should be over $1.5 million, to account for all the goods in both Petitioner's and El Saleh's possession (Plea Agreement at ¶ 2[3]; U.S.S.G. § 2B1.1(b)(1)(H)); (c) two levels were added for Petitioner's conviction under 18 U.S.C. § 1956;

---

[3] Notably, if the Petitioner had been held accountable for a loss amount of $1.5 million, his offense level would have been increased by 18 points. *See* U.S.S.G. § 2B1.1(b)(1)(J).

and a total of three levels were for Petitioner's timely acceptance of responsibility (*see* U.S.S.G. § 2S1.1(b)(2)(B); U.S.S.G. § 3E1.1(a); Plea Agreement at ¶ 2). This resulted in a total offense level of 21. With Petitioner's criminal history Category of I, the court found that Petitioner's Guidelines range was 37-46 months' imprisonment, the same range estimated in the Plea Agreement. (U.S.S.G. § 5A; Plea Agreement at ¶ 2.) After considering the factors under 18 U.S.C. § 3553(a), the court sentenced Petitioner to 37 months' imprisonment followed by three years of supervised release. (J. of Conviction at 2-3.) Petitioner did not file a direct appeal. (Opp'n at 8.)

On June 25, 2012, Petitioner filed the instant action, *pro se*, challenging the validity of his guilty plea by arguing that he was denied the effective assistance of counsel and due process. Specifically, Petitioner contends that he received ineffective assistance of counsel in violation of the Sixth Amendment because his attorney during the criminal proceedings failed to: (1) object to the amount of money that Petitioner was held accountable for laundering; (2) object to the money laundering charge; (3) seek a downward departure in his sentence pursuant to U.S.S.G. § 2S1.1(b)(2)(B); (4) adequately communicate with and advise him; (5) inform him of the consequences of the appeal and collateral attack waivers in the Plea Agreement; and (6) provide him with an Arabic translator. (Pet.'s Memorandum of Law in Support ("Pet.'s Mem."), Dkt. Entry No. 1-1 at 6-9.) Petitioner also asserts that that he was deprived of due process in violation of the Fifth Amendment because the Magistrate Judge did not inform him of the waiver of his right to appeal and did not provide him with an Arabic translator. (*Id*. at 9-10.) The government opposes the Petition contending: (1) Petitioner's claims are procedurally barred because he waived his right to appeal or to collaterally attack his conviction pursuant to the Plea Agreement; (2) Petitioner's Sixth Amendment claim is procedurally barred because he did not raise it on

direct appeal; and (3) Petitioner's claims lack merit. (Opp'n at 9, 12, 15.)

## DISCUSSION[4]

### I. Petitioner Waived His Right to Seek Habeas Relief

Generally, the Second Circuit rejects attempts to challenge a conviction when a petitioner waived that right pursuant to a written plea agreement. *See Garcia-Santos v. United States*, 273 F. 3d 506, 508-09 (2d Cir. 2001); *United States v. Stevens,* 66 F. 3d 431, 437 (2d Cir. 1995); *Torres-Cuesta v. United States*, 2010 WL 3928588, at *3 (E.D.N.Y. Sept. 30, 2010) (finding that "[i]t is well settled in this circuit that an agreement waiving the right to appeal a sentence is enforceable as long as it was knowing and voluntary"). Courts also have enforced such waivers when, pursuant to a written plea agreement, a petitioner agrees not to challenge a sentence within a stipulated Guidelines range. *See Garcia-Santos*, 273 F. 3d at 508-09 (finding a petitioner's waiver of appeal and collateral attack binding in a § 2255 proceeding when the imprisonment term is within the stipulated Guidelines); *United States v. Pipitone*, 67 F. 3d 34, 39 (2d Cir. 1995) (finding that a petitioner's "explicit undertaking in the [Plea] Agreement not to appeal a sentence that fell within a guideline range" precluded him from both directly appealing or collaterally challenging his sentence).

However, the Second Circuit has found that "a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez*, 242 F. 3d 110, 113-114 (2d Cir. 2001) (citing *United States v. Djelevic*, 161 F. 3d 104, 107 (2d Cir. 1998)). "[A] waiver of the right to appeal should only be enforced by an appellate court if the record 'clearly

---

[4] In reviewing the Petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

demonstrates' that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *United States v. Ready*, 82 F. 3d 551, 557 (2d Cir. 1996) (citing *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir. 1995)). Therefore, a waiver is not enforceable, if a defendant can demonstrate that he unknowingly or involuntarily agreed to the plea directly due to the ineffective assistance of his counsel during the negotiation of the plea agreement. *See Hernandez*, 242 F. 3d at 113-14.

In the context of determining the voluntariness of a plea, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [the] guilty plea." *United States v. Gonzalez*, 647 F. 3d 41, 56-57 (2d Cir. 2011) (citations and quotation marks omitted). "'[I]n the absence of any credible evidence to the contrary the court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary . . . [,] he discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel.'" *Pringle v. United States*, 2011 WL 3792820, at *3 (S.D.N.Y. Aug. 25, 2011) (quoting *United States v. Soler*, 289 F. Supp. 2d 210, 216 (D. Conn. 2003)).

Here, the record is clear that Petitioner received and signed the written plea agreement, and knowingly and voluntarily waived his right to seek habeas relief. (*See* Guilty Plea Tr. at 6, 16, 19, 20.) The Magistrate Judge explicitly verified that Petitioner was aware of the waiver. (*See id.* at 19.) The Magistrate Judge questioned Petitioner about the waiver of his right to appeal in this case and the record indicates that Petitioner understood the significance of the waiver. (*See id.*) Petitioner's counsel also explained the Plea Agreement to Petitioner, including "what giving up the right to appeal and the right to collaterally attack his sentence entailed."

(Affidavit of Petitioner's Attorney ("Atty. Aff."), Opp'n Ex. F at 4.) Petitioner "was not concerned about giving up these rights," he understood that the government's case was strong, and he was satisfied that he was only being held responsible for the counterfeit items in his possession. (*Id*.) Petitioner acknowledged that he: (1) had discussed the Plea Agreement with defense counsel; (2) had not been made any promises; and (3) was satisfied with counsel's representation. (Guilty Plea Tr. at 6, 7, 16, 20.)

Notably, Petitioner also acknowledged that he understood he could not appeal if the court imposed a sentence of 51 months or less. (*Id*. at 19.) Petitioner responded, "Yes" when asked, under oath, if he was "willing to give up his rights to trial and all the other rights [] discussed" (*id*. at 20) and acknowledged that he could not withdraw his plea (Plea Agreement ¶ 3). Petitioner also stated that he did not have any questions for the Magistrate Judge or counsel. (Guilty Plea Tr. at 20.) These statements, given under oath, demonstrate that Petitioner knowingly and voluntarily pled guilty, and there is no credible evidence to the contrary. Petitioner's sentence of 37 months of imprisonment was below the sentence stipulated in the Plea Agreement. Accordingly, Petitioner knowingly and voluntarily waived his right to challenge his conviction and sentence. For this reason alone, the Petition is denied.

## II. Petitioner's Claim of Ineffective Assistance of Counsel Lacks Merit

Assuming arguendo, that Petitioner had not waived his right to habeas relief, his Sixth Amendment claims are substantively deficient. Petitioner claims that his counsel was ineffective because counsel failed to: (1) object to the amount of laundered money that Petitioner was held accountable for; (2) object to the money laundering charge; (3) seek a downward departure at sentencing; (4) adequately communicate with and advise Petitioner; (5) inform Petitioner of the Plea Agreement implications regarding his waiver of right to appeal or collaterally attack his

conviction or sentence; and (6) provide Petitioner with an Arabic translator. (Pet.'s Mem. at 6-9.)

The court evaluates Petitioner's ineffective assistance claim under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). "A defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. If Petitioner overcomes that burden, he must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

### A. Total Amount

Petitioner claims that his counsel was ineffective by failing to object to the amount of laundered money for which he was held accountable under the Guidelines. Petitioner argues that he provided counsel with receipts "proving that much of the merchandise at issue was not counterfeit and could not be properly counted in the loss valuation," but that counsel did not challenge the calculation. (Pet. at 6.) Petitioner argues that "the correct amount of loss should have been less than $200,000." (*Id*.)

The Supreme Court has held that "[t]he law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009); *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (explaining counsel's responsibility to present mitigating evidence at sentencing and noting that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant"). "Counsel also is not required to have a tactical reason—above and beyond a

reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles,* 556 U.S. at 127.

Under U.S.S.G. § 1B1.3(a)(1)(B), Petitioner is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" in which he "aided" and "abetted." In addition, with respect to offenses involving contraband, Petitioner is responsible for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3(a)(1)(B) cmt. n.2; *see also United States v. Thorn*, 317 F. 3d 107, 123 (2d Cir. 2003) (indicating that the money laundering base offense level is calculated by including relevant conduct pursuant to U.S.S.G. § 1B1.3); *United States v. Chalarca*, 95 F. 3d 239, 243 (2d Cir. 1996) (noting that at sentencing, defendant is accountable for the total amount of contraband possessed regardless of whether he foresaw that amount as long as he directly participated in the joint undertaking (citing *United States v. de Velasquez*, 28 F. 3d 2, 6 (2d Cir. 1994)).

First, the evidence indicates that Petitioner was accountable for more than $400,000. Petitioner and co-conspirator El Saleh supplied each other with counterfeit goods. Furthermore, during his plea allocution, Petitioner admitted to being aware that the goods he bought and sold were counterfeit. (*See* Guilty Plea Tr. at 21.) Intellectual Property Agents seized $411,275 worth of counterfeit clothing from Petitioner's store and $1,158,840 worth of counterfeit goods from El Saleh's warehouse and store. (PSR ¶ 20.) There was ample proof that the counterfeit items seized from Petitioner and El Saleh were worth over $1.5 million. (*Id*.) There was $1.8 million worth of counterfeit goods seized, in addition to trafficking goods that were not seized, which totaled a loss amount of over $2.5 million for all of the conspirators involved, including Petitioner, El Saleh and Petitioner's relative. (Opp'n at 5 n.2.) Based on the foregoing,

challenging the value of the merchandise would not have changed the outcome of the sentence because the evidence indicates that Petitioner was liable for a far greater sum than that to which he pled guilty.

Second, counsel exhibited reasonable professional judgment in deciding not to have a hearing to challenge the lesser amount of $400,000. *See Panuccio v. Kelly*, 927 F. 2d 106, 109 (2d Cir. 1991) (rejecting an ineffective assistance claim when defense would likely not have succeeded at trial and would have exposed defendant to significant additional punishment). Such a hearing could have resulted in Petitioner being held responsible for $2.5 million in counterfeit goods, which would have added 18 levels to his total offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J). Moreover, a hearing could have negatively impacted the Court's view of Petitioner's acceptance of responsibility, which accounted for a reduction of two points in Petitioner's offense level. (Opp'n at 19; Plea Agreement at ¶ 2.)

Third, the evidence suggests that Petitioner instructed his counsel to accept the value of the plea for strategic reasons. Petitioner's counsel "explained to [Petitioner] that [they] could argue at his sentencing to reduce the loss amount by requesting a Fatico Hearing." (Atty. Aff. at 3.) It was Petitioner's "desire, [however], not to argue the amount and cut his losses . . . at the $411,275.00." (*Id.*) Petitioner "was satisfied that the Government was only holding him responsible for the amount of counterfeit goods that were actually in his possession" and that he "got the best deal he could get . . . with his plea." (*Id.* at 4.) After all, "the original amount in the conspiracy was calculated at $1,158,840.00." (*Id.* at 3.) Petitioner cannot abandon that strategy by manufacturing an ineffective assistance of counsel claim. If the court "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing the plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless."

*Djelevic,* 161 F. 3d at 107 (2d Cir. 1998).

      B.      **Money Laundering Charge**

Petitioner further claims that counsel was ineffective by failing to contest the money laundering charge. Petitioner argues that his attorney should have objected to the charge because "there was no evidence that could support" that Petitioner "ever attempted 'to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'" (Pet.'s Mem. at 6.)

With regard to conducting such illegal transactions, the money laundering charge has two prongs:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
> (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; *or*
> (B) knowing that the transaction is designed in whole or in part--
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
> (ii) to avoid a transaction reporting requirement under State or Federal law . . .

18 U.S.C. § 1956 (emphasis added).

The two prongs are independent of one another. The conjunction "or," which separates them, indicates an alternative, rather than a connection or addition. Petitioner acknowledged that he conspired to launder the proceeds of counterfeit clothing trafficking. (*See* Plea Agreement; Guilty Plea Tr. at 20-25.) Petitioner admitted that his actions that made him guilty of the money laundering conspiracy charge consisted of "buying . . . counterfeit goods [several times], writ[ing] checks from [his] checks to buy more goods from [co-conspirators]," selling the goods, and depositing the proceeds from the sales in his bank account. (Guilty Plea Tr. at 20-25.) As

such, Petitioner's conduct falls under 18 U.S.C. § 1956 (a)(1)(A)(i), which is sufficient to warrant a finding of guilt. An objection by his attorney would not have made a difference. Consequently, Petitioner's claim is meritless.

### C. Downward Departure in Sentence

Petitioner claims that defense counsel was ineffective because counsel did not seek a downward departure pursuant to U.S.S.G. § 2S1.1 Application Note 3(C) during Petitioner's sentencing. If a defendant is convicted under 18 U.S.C. § 1956, the base offense level is to be increased by 2 levels. *See* U.S.S.G. § 2S1.1(b)(2)(B). Petitioner contends, however, that the two-level sentence enhancement should not have been applied because pursuant to U.S.S.G. § 2S1.1 Application Note 3(C), "Subsection (b)(2)(B) shall not apply if the defendant was convicted of a conspiracy under 18 U.S.C. § 1956(h) and the sole object of that conspiracy was to commit an offense set forth in 18 U.S.C. § 1957."

The objects of the conspiracy in which Petitioner participated were money laundering and, importantly, the selling and trafficking of counterfeit goods "through the criminal infringement of trademarks." (PSR ¶ 29.) The court has not found any Second Circuit cases specifically discussing the interpretation of § 2S1.1 Application Note 3(C). There is, however, a circuit split regarding whether it applies to all the acts in the conspiracy, or just those for which a defendant was convicted. *Compare United States v. Adargas*, 366 F. 3d 879, 883 (10th Cir. 2004) (holding that the plain meaning of "that conspiracy" in the application note refers back to the 18 U.S.C. § 1956(h) conspiracy charge, which defendant understood he was pleading guilty to); *with United States v. Tedder,* 403 F. 3d 836, 844 (7th Cir. 2005) (finding that the Sentencing Commission decided to impose the same punishment for money laundering and money-laundering conspiracy).

The circuit split indicates that it was not clear whether a downward departure applied to Petitioner. As previously discussed, however, counsel was not required to make every available defense. *Knowles*, 556 U.S. at 127. More importantly, even if a downward departure did apply, the two-level downward departure Petitioner is requesting corresponds with a Guidelines level of 19, or a range of 30-37 months' imprisonment. Petitioner's 37-month sentence is within that range. Accordingly, defense counsel's actions were not so deficient as to be constitutionally ineffective.

### D. Counsel's Communication with Petitioner

#### 1. Likely Sentence

Petitioner agues that defense counsel told him that his likely sentence would be, at most, one year. (*See* Pet.'s Mem. at 7.) Petitioner's counsel refutes that assertion. (*See* Atty. Aff. at 2.) A claim that counsel promised a defendant a maximum sentence is "baseless" if a defendant "stated during the plea colloquy that he had not been promised anything with regard to his guilty plea." *Goldberg v. United States*, 100 F. 3d 941, at *1 (2d Cir. 1996); *see also United States v. Torres*, 129 F. 3d 710, 715 (2d Cir. 1997) (explaining that appellant's claim that his attorney coerced him into accepting a guilty plea was without merit because "statements at a plea allocution carry a strong presumption of veracity" and "his unequivocal admissions under oath contradict his unsupported assertions of pressure" (citations omitted)).

It is apparent from the record that Petitioner understood that no promises were being made regarding his sentence. (*See* Guilty Plea Tr. at 6.) Furthermore, both counsel and the Magistrate Judge informed Petitioner of the possible sentences he faced. (*See* Atty. Aff. at 2-3; Guilty Plea Tr. at 16-19.) Counsel told Petitioner he would request a departure from the Guidelines, but informed Petitioner that he "should be prepared to be sentenced anywhere from

37 to 46 months in prison" if he accepted the Plea Agreement. (Atty. Aff. at 2.) The Magistrate Judge explained that this Court would make the ultimate sentencing decision. (*See* Guilty Plea Tr. at 15.)

### 2. Advice

Petitioner's claim that counsel improperly advised him as to the potential sentence lacks merit. First,

> even if counsel provides deficient advice, a defendant who understands the actual sentencing possibilities prior to entering the plea cannot succeed on an ineffective assistance of counsel claim because the defendant cannot prove that but for counsel's unprofessional errors, he would have elected to proceed with the trial instead of pleading guilty.

*Soler*, 289 F. Supp. 2d at 215 (citations and quotation marks omitted). It is abundantly clear from the record that Petitioner was informed of the extent of the sentence he was facing as a result of the Plea Agreement. (*See* Guilty Plea Tr. at 16-19.) Second, an erroneous sentence estimate is not enough, on its own, to rise to the level of ineffective assistance. *See Goldberg*, 100 F. 3d at *1 (explaining that counsel's mistaken estimate of the appellant's likely sentence is insufficient to support a claim for ineffective assistance of counsel); *United States v. Sweeney*, 878 F. 2d 68, 69-70 (2d Cir. 1989) (counsel's "erroneous estimate" of guidelines sentencing range does not constitute ineffective assistance of counsel).

Third, courts have rejected such claims when counsel's advice to accept a plea results in the conviction of far fewer charges. *See Urena v. People of State of New York*, 160 F. Supp.2d 606, 611 (S.D.N.Y. 2001) (finding "that trial counsel's advice to petitioner to accept the plea offer did not constitute ineffective assistance because it was a plea to fewer than all the counts in the indictment and for less than the maximum sentence to which the petitioner was exposed"). Under the Plea Agreement, Petitioner agreed to a Guidelines Range, the maximum of which was

46 months of imprisonment. Without the Plea Agreement, Petitioner potentially faced a maximum potential sentence of 20 years of imprisonment. In light of these circumstances, it is clear that counsel provided effective assistance and exhibited objectively reasonable professional judgment concerning the calculation of Petitioner's sentence and advice regarding the Plea Agreement.

### 3. Developments in the Case

Petitioner further claims that counsel was deficient because he did not keep Petitioner "informed of developments in the case," and did not provide Petitioner with court documents or a CD turned over in discovery that purportedly contained conversations that tied Petitioner to the conspiracy. (Pet.'s Mem. at 7.) Counsel has a duty "to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Petitioner stated, under oath, that he conferred with counsel about the Plea Agreement and the case and that he understood the charges against him. (Guilty Plea Tr. at 7.) Petitioner's counsel asserts that he met with Petitioner to discuss the case and the Plea Agreement and that Petitioner was content with his representation. (*See* Atty. Aff. at 2; Guilty Plea Tr. at 4, 20.) Counsel also asserts that Petitioner had "no desire to listen to the CD nor look at the discovery." (Atty. Aff. at 2.) Petitioner did not state any concerns or ask any questions during his allocution regarding discovery. (*See generally* Guilty Plea Tr.) Thus, there is no support in the record for Petitioner's assertion.

### 4. Implication of Waiver

Petitioner claims defense counsel was ineffective because counsel did not inform Petitioner of the consequences of the appeal and collateral attack waivers in the Plea Agreement. As discussed above, Petitioner acknowledged both that no promises were made to him regarding

his sentence, and an understanding of the Plea agreement, including the waiver provisions. (*See generally* Plea Agreement.) The Magistrate Judge explicitly verified that Petitioner was aware of his rights and had had sufficient time to consult with counsel. (Guilty Plea Tr. at 25.) Petitioner stated under oath that he understood all questions asked and, when asked if he had any questions, he said he did not. (Guilty Plea Tr. at 20.) Notably, "even if [Petitioner's] trial counsel did not apprise him of his basic rights and the risks in pleading guilty, [Petitioner] cannot prove prejudice because he was so informed by this [c]ourt at the plea hearing." *See Wang v. United States*, 2011 WL 73327, at *5 (E.D.N.Y. Jan. 10, 2011) (dismissing petitioner's ineffective assistance of counsel claim). Accordingly, Petitioner's claim is meritless.

### 5. Translator

Petitioner asserts that his counsel was ineffective because he did not provide Petitioner with an Arabic translator. Petitioner argues that he did not understand English, but the record shows otherwise. Petitioner provided responses, some lengthy, in English to questions during his plea allocution. (Guilty Plea Tr. at 21-24.) Petitioner has resided in the United States since 1987 and has been a citizen since 1997. (PSR ¶ 66.) Since 1987, Petitioner has worked at clothing stores where he has had daily contact with English-speaking customers. (Atty. Aff. at 1.) Petitioner, his wife, and his daughter also informed defense counsel that Petitioner speaks and understands English and that there was no need for a translator. (*Id.*) Under these circumstances, Petitioner failed to show that counsel's representation fell below an objective standard of reasonableness.

## III. Petitioner's Fifth Amendment Claim

Petitioner further seeks to circumvent the appellate waiver by alleging his Fifth Amendment due process rights were violated. He argues that the Magistrate Judge did not

16

inform him of the waiver of his right to appeal, thereby rendering his plea unknowing or involuntary. As previously discussed, the record is clear that Petitioner was adequately informed of his rights. (*See* Guilty Plea Tr. at 20, 25.) Therefore, Petitioner's claim is a baseless attempt to circumvent the Plea Agreement's waiver of appeal. *See United States v. Garcia*, 166 F. 3d 519, 522 (2d Cir. 1999) (dismissing the due process claim on appeal enforcing the plea agreement waiver). Petitioner argues that the Court further violated his due process rights by not providing him with a translator. As previously stated, however, the record is clear that Petitioner spoke and understood English and, therefore, did not need a translator. (*See* Guilty Plea Tr. at 21-24; Atty. Aff. at 1.) Accordingly, Petitioner's Fifth Amendment claim is dismissed.

IV. **Request for Evidentiary Hearing**

Petitioner requests an evidentiary hearing with regard to his Sixth Amendment claims. To warrant a hearing:

> the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

*United States v. Aiello*, 814 F. 2d 109, 113-14 (2d Cir. 1987) (citations omitted). When a defendant's proffer involves "a generic claim . . . based solely on his own highly self-serving and improbable assertions," counsel's "detailed description of events was eminently credible," and a court is familiar with a proceeding and circumstances surrounding it, written submissions suffice. *Chang v. United States*, 250 F. 3d 79, 86 (2d Cir. 2001).

Petitioner argues that there are material facts in dispute, essentially framing this proceeding as a factual dispute between him and his counsel. Even if Petitioner and his counsel allege different facts, Petitioner's claims are general and conclusory. Moreover, the record

effectively rebuts Petitioner's claims, even without his counsel's affidavit. Petitioner stated on the record that he examined the Plea Agreement with counsel, that Petitioner understood the Plea Agreement, and that he was satisfied with his counsel's representation and advice. (Guilty Plea Tr. at 4, 6, 16, 20.) The record is also clear that Petitioner understood English as he provided responses in English to the Magistrate Judge's questions during his plea allocution. (*See* Guilty Plea Tr. at 21-24.) Moreover, a review of the docket reveals that Petitioner never requested the services of an Arabic interpreter at any of the Court proceedings, including bail and detention hearings, arraignment, status conferences, guilty plea and sentencing. Accordingly, there is no basis for an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to 28 U.S.C. § 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED:     Brooklyn, New York
            March 2, 2015

                                            _____/s/_____
                                              DORA L. IRIZARRY
                                          United States District Judge